UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

HECTOR CODY ORTIZ, III,

                    Plaintiff,

     v.

PIERCE COUNTY et al.,

                    Defendants.

Case No. 3:22-cv-05947-JLR-TLF

REPORT AND
RECOMMENDATION

NOTED FOR: JUNE 9, 2023

Plaintiff proceeds *pro se* and *in forma pauperis* in this 42 U.S.C. § 1983 civil rights action. Currently pending before the Court are two separate motions to dismiss. The first motion to dismiss is filed by defendants Miguel A. Balderrama, Patti Jackson-Kidder, Gayle Pero, and Pierce County (collectively "Pierce County defendants"). Dkt. 14. The second motion to dismiss is filed by defendants Maria Ordonez and Jonathan Slothower (collectively "NaphCare defendants"). Dkt. 16.

This matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4. As discussed below, the Court recommends that the Pierce County defendants' motions to dismiss (Dkts. 14) be denied. The official capacity claims against Pierce County defendants should be dismissed as redundant.

The Court recommends that the NaphCare defendants' motion to dismiss (Dkt. 16) be denied as to the claims against Dr. Ordonez and HSA Slothower in their

individual capacities and in their official capacities. In addition, the Court should grant

plaintiff an opportunity to clarify whether he intends to bring claims related to retaliation

or access to the courts against any defendant; if plaintiff does intend to bring any such

claim, the Court should allow plaintiff an opportunity to amend the complaint.

I.    FACTUAL BACKGROUND

The facts as described are alleged in the complaint (Dkt. 4) and are assumed to

be true only for the purposes of reviewing this motion. *Cedar Point Nursery v. Shiroma*,

923 F.3d 524, 530 (9th Cir. 2019).

Plaintiff is detained pretrial at the Pierce County Jail, and alleges the defendants

denied him medical care. Dkt. 4, Complaint, at 1-57. He names as defendants: Pierce

County; Pierce County Jail employees – Chief of Internal Operations Patti Jackson-

Kidder ("Chief Jackson"), Lieutenant Gayle Pero, and Head Medical Doctor Miguel A.

Balderrama; and NaphCare employees – Dentist Maria Ordonez, and Head Service

Administrator Jonathan Slothower ("HSA Slothower"). *Id*. at 6-10. Plaintiff names all

defendants in their individual and official capacities. Plaintiff has attached and

incorporated by reference a set of documents to support the claims in his Complaint.

Dkt. 4 at 57-128.

Plaintiff alleges that acts and omissions by defendants have resulted in generally

unsafe and unsuitable conditions for pretrial detainees of Pierce County Jail. *Id*. at 11-

13. Plaintiff further alleges that defendants were on notice as early as April 3, 2021, that

plaintiff was suffering from pain attributable to two abscessed and decayed molars but

failed to take steps necessary to treat his medical condition for an extended time. *Id*. at

15-38.

After filing grievances regarding his dental pain beginning April 3, 2021 (the day after he was booked into Pierce County Jail), plaintiff was first seen by Dr. Maria Ordonez, DDS, on May 21, 2021. *Id*. at 19-20. Dr. Ordonez diagnosed plaintiff with "gross decay occlusal and distal into the pulp chamber affecting the nerve and periapical abscess" and indicated he would need to be seen by a private dentist or surgeon. *Id*. Plaintiff states that in total he waited 15 weeks to be taken to a private oral surgeon for a root canal on his first molar and 60 weeks to have his second molar removed. *Id*. at 23, 38.

Plaintiff alleges that during the period when he was waiting for his tooth to be extracted the condition of his tooth significantly worsened and he experienced symptoms – including severe pain, spitting up blood for over a month, clots of blood emerging from the hole in his tooth, and an odor emitting from the tooth. *Id*. at 31-32. As a result of these symptoms, plaintiff experienced loss of sleep and loss of appetite. Dkt. 4 at 15. Because of his pain, plaintiff was placed on a fully liquid diet that, he alleges, was at times – contaminated with foreign objects, opened or spilled in the bag, or not served at all due to inadequate kitchen staffing. *Id*. at 16, 33-34.

Plaintiff asserts he attempted to bring attention to the severity of his condition in multiple ways, first by filing grievances through the prison kite system, and later by engaging in a hunger strike, and then by writing a letter to defendants HSA Slothower and Chief Jackson. *Id*. at 15, 16, 17, 18, 20, 22, 23, 24-25, 33-34. Plaintiff states he was informed on separate occasions, first by Dr. Ordonez, and then by Dr. Balderrama, that due to staffing at the jail and the cost of the procedure and transport he would need to wait until he was released, or until prison, to receive treatment. *Id*. at 19-20, 28. Plaintiff

1   informed staff that he would be incarcerated at Pierce County Jail for approximately two

2   years while awaiting trial. *Id*. at 19. Plaintiff states that while he was awaiting care, he

3   was prescribed anti-bacterial mouth wash, saltwater treatment, Tylenol, and Ibuprofen,

4   by medical staff of Pierce County Jail. *Id*. at 18.

5        Plaintiff also asserts that on October 8, 2022, he suffered a concussion,

6   fractures to his face, and severe damage to his eyeball; but he was not taken for

7   necessary surgery. *Id*. at 38-40. Specifically, plaintiff alleges that despite the examining

8   nurse's recommendation that he be transported to the hospital, Dr. Balderrama ordered

9   that he wait. *Id*. at 39. Plaintiff was taken to a hospital eight hours later when a nurse

10  walked by his cell and observed his condition. *Id*. Plaintiff was transferred from Tacoma

11  General Hospital to Harborview Medical Center due to the severity of his condition and

12  upon finding that his eyeball was severely damaged, hospital staff informed him they

13  would request for the jail to transport him back to the hospital for urgent surgery the

14  following Monday. *Id*. at 39-40. Plaintiff asserts that on November 18, 2022, he was still

15  waiting to be transported to Harborview for surgery. *Id*.

16       Plaintiff submits medical records from NaphCare documenting medical treatment

17  he received during the time at issue, grievances he filed pertaining to his medical

18  issues, and letters he wrote to prison administration alleging that he was being denied

19  adequate medical care. *Id*. at 59-128.

20              II.       STANDARD OF REVIEW

21       The Court's review of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is limited

22  to the complaint and documents incorporated into the complaint by reference. *Khoja v.*

23  *Orexigen Therapeutics Inc.*, 899 F.3d 988, 998 (9th Cir. 2018); *Lee v. City of Los*

24

25

*Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). A motion to dismiss may be granted only if plaintiff's complaint, with all factual allegations accepted as true, fails to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556, 570).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus, et al.*, 551 U.S. 89, 93 (2007) (internal citations omitted). However, the pleading must be more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

While the Court must accept all the allegations contained in the complaint as true, the Court does not accept as true a "legal conclusion couched as a factual allegation." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *Jones v. Community Development Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (vague and mere conclusory allegations unsupported by facts are not sufficient to state section 1983 claims); *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). While the Court is to construe the complaint liberally,

1   such construction "may not supply essential elements of the claim that were not initially
2   pled." *Pena*, 976 F.2d at 471.

3                               III.    DISCUSSION

4           In order to state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show:
5   (1) he suffered a violation of rights protected by the Constitution or created by federal
6   statute, and (2) the violation was proximately caused by a person acting under color of
7   state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The first step in
8   a § 1983 claim is therefore to identify the specific constitutional right allegedly infringed.
9   *Albright v. Oliver*, 510 U.S. 266, 271 (1994). To satisfy the second prong, a plaintiff must
10  allege facts showing how individually named defendants caused, or personally
11  participated in causing, the harm alleged in the complaint. *See Arnold v. IBM*, 637 F.2d
12  1350, 1355 (9th Cir. 1981).

13          Plaintiff alleges violations of his Eighth and Fourteenth amendment rights. Dkt. 4.
14  "Eighth Amendment protections apply only once a prisoner has been convicted of a
15  crime, while pretrial detainees are entitled to the potentially more expansive protections
16  of the Due Process Clause of the Fourteenth Amendment." *Mendiola-Martinez v.*
17  *Arpaio*, 836 F.3d 1239, 1246 n. 5 (9th Cir. 2016) (*citing Kingsley v. Hendrickson*, 135 S.
18  Ct. 2466 (2015)). Even though conditions of confinement claims brought by pretrial
19  detainees arise under the Due Process Clause, the guarantees of the Eighth
20  Amendment "provide a minimum standard of care for determining rights as a pretrial
21  detainee." *Gordon v. County. Of Orange,* 888 F.3d 1118, 1122 (9th Cir. 2018).

22          To state a Fourteenth Amendment claim relating to medical care of a pre-trial
23  detainee, a plaintiff must include factual allegations that a state actor acted, or failed to

24

25

1    act, in a manner that shows deliberate indifference to their serious medical needs.

2    *Gordon v. County of Orange,* 888 F.3d 1118, 1124-25 (9th Cir. 2018).

3            The elements are:"(i) the defendant made an intentional decision with respect to
        the conditions under which the plaintiff was confined; (ii) those conditions put the

4        plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not
        take reasonable available measures to abate that risk, even though a reasonable

5        official in the circumstances would have appreciated the high degree of risk
        involved – making the consequences of the defendant's conduct obvious; and

6        (iv) by not taking such measures, the defendant caused the plaintiff's injuries."

7    *Id.,* at 1125. The defendant's conduct must be objectively unreasonable; concerning

8    element (iii), plaintiff is required to show more than negligence, but less than subjective

9    intent – "something akin to reckless disregard." *Id.* (citations and internal quotations

10   omitted).

11           Plaintiff must show his medical condition is "objectively a serious one." *Brock v.*

12   *Wright,* 315 F.3d 158, 162 (2nd Cir. 2003). Seriousness of the condition may be present

13   where there is:

14       … The existence of an injury that a reasonable doctor or patient would find
        important and worthy of comment or treatment; the presence of a medical

15       condition that significantly affects an individual's daily activities; or the existence
        of chronic and substantial pain…

16   *McGuckin*, 974 F.2d 1050, 1059-60 (9th Cir. 1992); *see also Brock*, 315 F.3d at 162.

17   "Dental care is one of the most important medical needs of inmates." *Hunt v. Dental*

18   *Dept.*, 865 F.2d 198, 200 (9th Cir. 1989).

19           Here, plaintiff has alleged facts showing that he had two abscessed and decayed

20   teeth, he experienced severe pain, the infection had become severe enough that the

21   tooth emitted an odor, clots of blood were also being emitted, and his pain impacted his

22   daily activities. Dkt. 4. Plaintiff has alleged sufficient facts to state a plausible claim that

23   his infected teeth would be a serious medical need, meeting the first prong of the

24

25

deliberate indifference standard. *See McGuckin*, 974 F.2d at 1059-60; *Canell v. Bradshaw*, 840 F.Supp. 1382, 1393 (D. Or. 1993) (finding pain from a missing filling to be a serious dental need). Additionally, plaintiff alleges he was not taken to an oral surgeon for 108 days in the case of his first tooth, and he waited over a year for his second tooth to be removed. Dkt. 4 at 23, 37. Plaintiff asserts he suffered for over a year and required a root canal on one tooth and extraction of the other. *Id*. at 23, 38.

## A. Pierce County Defendants

### 1. Dr. Balderrama

Pierce County defendants argue that plaintiff has failed to state a claim against Dr. Balderrama because he failed to show any intentional decision made by Dr. Balderrama that put plaintiff at substantial risk of suffering serious harm. Dkt. 14 at 13-16. In his Complaint, plaintiff states that Dr. Balderrama is the head medical doctor at Pierce County Jail and as such was responsible for oversight of medical care, examination and treatment of inmates, and ensuring that inmates with serious medical conditions who could not be treated onsite were timely transported to outside providers. Dkt. 4 at 8-9.

Plaintiff states that Dr. Balderrama treated plaintiff throughout the period that he was awaiting and recovering from surgery by prescribing Tylenol, Ibuprofen, and a saltwater rinse. *Id*. at 16, 18, 20, 22, 24, 31, 38. Plaintiff also alleges that on October 15, 2021, plaintiff was evaluated by Dr. Balderrama for glaucoma, and he informed Dr. Balderrama of his dental pain and asked why he had not been transferred to an oral surgeon. *Id*. at 28. At this visit, plaintiff asserts he informed Dr. Balderrama that he believed Dr. Ordonez had been minimizing his pain level in his chart. *Id*. Plaintiff states

that Dr. Balderrama informed him that he would speak with HSA Slothower about plaintiff's condition but advised that it was highly unlikely he would be transferred to an oral surgeon. *Id*. at 29-30. Additionally, concerning the incident involving plaintiff's eyeball, plaintiff alleges that Dr. Balderrama ordered that plaintiff not be transferred to the hospital despite the seriousness of his condition. *Id*. at 39.

"Access to medical staff has no meaning if the medical staff is not competent to deal with the prisoners' problems." *Canell*, 840 F.Supp. at 1394 (*citing Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982)). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they 'deny, delay, or intentionally interfere with medical treatment.'" *Hallett v. Morgan* 296 F.3d 732, 744 (9th Cir. 2002) (*citing Hamilton v. Endell*, 981 F.2d 1062, 1066 (9th Cir. 1992)). The complaint asserts a plausible claim that Dr. Balderrama failed to provide meaningful access to dental care; plaintiff asserts that staff at Pierce County Jail were not qualified to perform the procedures plaintiff required and Dr. Balderrama did not refer plaintiff to a qualified medical professional for the appropriate and necessary treatment in a timely manner. *See Robertson v. Kitsap County,* 2015 WL 8488800 (W.D. Wash. Oct. 27, 2015) (Denying motion to dismiss Eighth Amendment claim where complaint showed defendants failed to provide meaningful access to dental care as they were not dental professionals and failed to refer plaintiff to dentist in a timely manner); *See also Franklin v. Ackerman*, 2021 WL 4295846 (W.D. Wash. Aug. 26, 2021).

Therefore, these are not simply allegations of negligence or a difference of medical opinion. The facts sufficiently allege Dr. Balderrama acted with deliberate indifference by intentionally delaying and failing to provide plaintiff with timely and

adequate dental care, under the Fourteenth Amendment standard. *See Hunt*, 865 F.2d at 200 (finding the plaintiff sufficiently pled a claim of deliberate indifference when the plaintiff alleged prison officials were aware of bleeding gums, breaking teeth and an inability to eat, yet failed to take action to relieve pain until new dentures could be fitted); *Canell*, 840 F.Supp. at 1393 (denying summary judgment where a nurse observed a large hole in the prisoner's tooth, tears in his eyes, and swollen gums, yet refused to refer the prisoner to a qualified doctor or dentist and told the prisoner he would be seen when he was transferred to a different facility); *Field v. Gander*, 734 F.2d 1313, 1315 (8th Cir. 1984) (finding deliberate indifference where a prisoner claimed a jailor knew of the prisoner's pain from an infected tooth but refused to provide dental care for up to three weeks).

### 2. Chief Jackson and Lt. Pero

Pierce County defendants assert that plaintiff has failed to state a claim against Chief Jackson and Lt. Pero because plaintiff's claims based on failure to supervise are not actionable under § 1983 and plaintiff did not allege any other actionable unconstitutional acts or omissions against either defendant. Dkt. 14 at 11-13.

A Section 1983 suit cannot be based on vicarious liability alone. Rather, it must allege the defendant's own conduct violated the plaintiff's civil rights. *City of Canton v. Harris*, 489 U.S. 378, 385-90 (1989).

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). A supervisor who did not personally participate in the alleged misconduct may be held

liable only "based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). "Thus, a supervisor may 'be liable in [their] individual capacity for [their] own culpable action or inaction in the training, supervision, or control of [their] subordinates; for [their] acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others.'" *Rodriguez v. County of Los Angeles,* 891 F.3d 776, 798 (9th Cir. 2018) (quoting *Keates v. Koile,* 883 F.3d 1228, 1243 (9th Cir. 2018) (internal quotation omitted)).

The other category of claim that may be brought under Section 1983 against a supervisory agency official, would be concerning the official's authority to implement policy in their official capacity. *See Kentucky v. Graham,* 473 U.S. 159, 166 (1985); *McRorie v. Shimoda,* 795 F.2d 780, 783 (9th Cir. 1986).

### a. Chief Jackson

Plaintiff alleges that Chief Jackson is the Chief of Internal Operations of the Pierce County Jail and is responsible for overseeing jail operations such as staffing, budgeting, and operations, and the establishment of policies, procedures, and guidelines for the jailing and safekeeping of pretrial detainees housed in the Pierce County Jail. Dkt. 4 at 6-7. On January 26, 2022, plaintiff wrote a letter addressed to Chief Jackson informing her of his medical conditions, requesting to be sent to an oral surgeon, and explaining the issues with his liquid diet. *Id*. at 33-34. Plaintiff did not receive acknowledgment of his letter. *Id*. Plaintiff alleges that Chief Jackson failed to ensure that the jail was in conformance with the Constitution and Washington State law, did not appropriately expend funds for staffing and inmate medical care, and failed to

take disciplinary action to curb unconstitutional action on the part of defendants Slothower, Ordonez, Pero, and Balderrama. *Id.* at 45-46. Plaintiff seeks both monetary compensation and injunctive relief. *Id*. at 50-56.

The Complaint alleges plaintiff wrote directly to Chief Jackson on January 26, 2022, four months before his second ailing tooth was eventually extracted, informing her that he has been experiencing pain that had become progressively worse while awaiting surgery and explaining his concerns about repeated problems with his liquid diet. *Id*. at 98-103. The Complaint sufficiently alleges that Chief Jackson was objectively unreasonable in her assessment of the situation; plaintiff had a dental problem and was experiencing severe pain. *See Jett v. Penner*, 439 F.3d 1091, 1098 (9th Cir. 2006) (denying summary judgment because plaintiff was entitled to an inference that prison administrators received letters that he swore he sent to them). Additionally, administrators "are liable for deliberate indifference [under the Eighth Amendment standard, in a prison setting] when they knowingly fail to respond to an inmate's requests for help." *Id*. Here, under the Fourteenth Amendment standard, in a pretrial detainee jail setting, plaintiff directly reached out to Chief Jackson asking her to help him access necessary medical care and address the concerns with his meals, but no action was taken.

**b. Lt. Pero**

Regarding Lt. Pero, plaintiff states that as Lieutenant of Pierce County Jail, she is responsible for the medical and health care of individuals who are detained at the Pierce County Jail and oversees and approves the transportation of pretrial detainees to external medical providers. *Id*. at 7. Plaintiff alleges that on April 21, 2022, he was

informed by Dr. Ordonez that Lt. Pero, who was in charge of approving and arranging specialized medical care, had already been informed of plaintiff's medical condition. *Id* at 36. On May 7, 2022, plaintiff wrote a kite to Lt. Pero, informing her of his condition and the fact that he had already been waiting a year for treatment. *Id*.

Plaintiff asserts he did not receive a response to his kite. *Id*. Plaintiff also alleges that Lt. Pero failed to discharge her duty to oversee medical operations, ensure that plaintiff was transported to an outside surgeon in a timely manner, and take disciplinary action to curb unconstitutional action on the part of defendants Slothower, Ordonez, Pero, and Balderrama. *Id*. at 46-47.

Plaintiff sufficiently alleged that Lt. Pero was made aware that plaintiff was suffering from severe pain in his tooth – plaintiff alleges that Dr. Ordonez told her directly, and plaintiff asserts that he sent a kite to her on May 7, 2022, informing her of his condition. *Id*. at 36. Additionally, plaintiff alleges that Lt. Pero was responsible for coordinating transportation to an outside provider; plaintiff was repeatedly told by Dr. Ordonez that the delays in his treatment were partially due to the cost and staffing of transportation. 19-20, 36. Therefore, reading the Complaint in the light most favorable to plaintiff, it is plausible that, by not timely approving and taking actions to supervise the arranging of transportation to an oral surgeon, Lt. Pero was deliberately indifferent to plaintiff's serious medical condition, and the delay caused plaintiff to endure prolonged pain and a worsening condition. *Rodriguez v. County of Los Angeles,* 891 F.3d 776, 798 (9th Cir. 2018) (quoting *Keates v. Koile,* 883 F.3d 1228, 1243 (9th Cir. 2018) (internal quotation omitted)).

### 3. Pierce County

Defendant Pierce County joined defendants Balderrama, Jackson-Kidder, and Pero's motion to dismiss. Dkt. 14. A municipality is subject to liability under 42 U.S.C. § 1983 for constitutional violations "when the execution of the government's policy or custom . . . inflicts the injury." *City of Canton v. Harris,* 489 U.S. 378, 385 (1989) (quoting, *Springfield v. Kibbe,* 480 U.S. 257, 267 (1987) (O'Connor, J., dissenting)). To set forth a § 1983 claim against a municipality, a plaintiff must show the defendant's employees or agents acted through an official custom, pattern, or policy permitting deliberate indifference to, or violating, the plaintiff's civil rights, or that the entity ratified the unlawful conduct. *Monell v. Dep't. of Social Servs.,* 436 U.S. 658, 690-91 (1978). A plaintiff must show (1) deprivation of a constitutional right; (2) the municipality has a policy; (3) the policy amounts to deliberate indifference to a plaintiff's constitutional rights; and (4) the policy is the moving force behind the constitutional violation. *Monell,* 436 U.S. at 694; *Benavidez v. County of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021).

A municipality "cannot be held liable *solely* because it employs a tortfeasor. . . a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691 (emphasis in original). Similarly, mere negligence in training employees cannot support municipal liability; instead, plaintiff must allege facts demonstrating the failure to train amounts to deliberate indifference to the rights of those who deal with municipal employees. *City of Canton*, 489 U.S. at 388-89. Finally, a single incident of unconstitutional action is generally insufficient to state a claim for municipal liability. *Benavidez v. County. Of San Diego*, 993 F.3d 1134, 1154 (9th Cir. 2021).

Pierce County contends that plaintiff has failed to state a claim for deliberate indifference against it, arguing that he does not plead any facts showing that the individual County employee defendants' actions were the result of alleged practice or policy. Dkt. 14 at 16-18.

In the Complaint, plaintiff alleges that defendants acted pursuant to the following alleged custom, policies, practices, and/or procedures of Pierce County:

> (a) Operation and utilization of an understaffed and antiquated jail facility which caused the plaintiff, as well as other pre-trial detainees, to undergo suffering and punishment;
> (b) Continually and consistently underfunding or inadequately funding the jail facility and/or refusing to cover the financial cost of complicated or expensive medical surgerys, as well as the transportation to such medical providers; which in turn causes pre-trial detainees such as the plaintiff, to experience pain, suffering, and mental anguish resulting from delays in medical treatments.
> (c) Exposure of pretrial detainees such as the plaintiff with an emergent or serious medical need, to risks of physical harm, injury, and pain and suffering in the lack of properly trained jail staff which lack any capacity to process, identify, monitor, safeguard, and procure appropriate medical care for said pre-trial detainees.
> (d) Allowing, acquiescing in, and failing to correct the pervasive and widespread violations of Fourth and Eighth Amendment rights of all it's pre-trial detainees such as the plaintiff.

Dkt. 4 at 44-45. Plaintiff also alleges that he was continually informed he would not be seen for surgery until he was released, or until he arrived at prison upon conviction, due to the cost of transportation and treatment. *See id* at 19-20. Furthermore, the plaintiff alleges that despite the fact that two of plaintiff's teeth were noted to require extraction, only one of plaintiff's teeth was extracted on his first visit to an outside oral surgeon, on instruction from jail staff. *Id* at 23.

**4. Official Capacity**

The Pierce County defendants did not specifically challenge the official capacity claims against them; but, an official capacity suit against a municipal officer is equivalent to a suit against the entity, and therefore the district court may dismiss the official capacity claims against the officer as redundant. *See, Brandon v. Holt,* 467 U.S. 464, 469-470 (1985) (suit against a municipal employee in their official capacity is a suit against the municipality); *Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cnty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008). Because plaintiff's claims against the Pierce County defendants in their official capacities are redundant when plaintiff has also asserted *Monell* claims against Pierce County as an entity, those claims may be dismissed. *Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cnty. Sheriff Dep't,* at 799; *see Estate of Contreras v. Cnty of Glenn*, 725 F.Supp. 2d 1157, 1159-60 (E.D. Cal. 2010). This dismissal has no impact on the suit against these officers in their individual capacity[1]. *Id.*

**B. NaphCare Defendants**

Neither Dr. Ordonez, HSA Slothower, nor NaphCare, disputes that they acted under the color of state law while providing medical care to pretrial detainees of Pierce County Jail. The Supreme Court has concluded, in the prison context, that a physician under contract to provide medical services to inmates was a state actor for purposes of § 1983. *West v. Atkins*, 487 U.S. 42, 55-56 (1988). In *West*, the court found

---

[1] Plaintiff does not list members of the Pierce County Council, as named defendants, but he alleges several times throughout the Complaint that pretrial detainees such as himself have been subjected to cruel and unusual punishment as a direct result of the "failures and omissions of the County of Pierce, State of Washington, by and through its policy-making officials, Chief of Internal Operations, and the unknown members of the County Board." Dkt. 4 at 12-13. Plaintiff does not specify which Board or governing body or governing official he is referencing, or whether he is intending to name as defendants the Pierce County Council or Pierce County Executive, however, it appears that these claims would also be duplicative of plaintiff's *Monell* claims against Pierce County and thus subject to dismissal.

determinative the fact that the state had a duty to provide adequate medical care to prisoners and that the state had delegated this duty to a private contractor. *Id*. The same is true here of the NaphCare defendants, and the Court will analyze plaintiff's claims as such.

### 1.  Dr. Ordonez, Individual Capacity

NaphCare defendants contend that plaintiff failed to state a claim against Dr. Ordonez because plaintiff failed to allege any intentional decision or action by Dr. Ordonez. Dkt. 16 at 11.

In his Complaint, plaintiff alleges that Dr. Ordonez regularly evaluated plaintiff and treated his symptoms. *See* Dkt. 4 at 19-20, 20-22, 26-27, 35, 36. Plaintiff also alleges throughout his Complaint that Dr. Ordonez repeatedly told plaintiff that she would try and speak to her supervisors to try and get him transferred to an outside surgeon, but it was highly unlikely that he would be transferred due to costs and staffing. *Id*. at 20, 22, 35, 36.  Plaintiff alleges that Dr. Ordonez failed to ensure that plaintiff would be transferred to a qualified surgeon because she was not qualified to perform the necessary procedures. *Id*. at 47. Additionally, plaintiff alleged to Dr. Balderrama that he believed that Dr. Ordonez was minimizing his pain levels in his chart – plaintiff states he was concerned because she noted on multiple occasions that his pain was a "3 out of 10 or 4 out of 10" but she had never asked plaintiff to rate his pain. *Id*. at 28.

The Complaint alleges that Dr. Ordonez was aware of plaintiff's condition. Additionally, plaintiff has sufficiently alleged that Dr. Ordonez, as the only dentist who evaluated plaintiff, was deliberately indifferent to plaintiff's medical needs. Reading the

Complaint in the light most favorable to plaintiff, Dr. Ordonez's evaluation of his pain plausibly could have been a link in the chain of causation with respect to the timing of his access to care – because even if (as defendants and plaintiff agree) she did not have authority to approve plaintiff for transfer to an outside facility on her own, her evaluations of plaintiff provided a "gate-keeping" role in her supervisors' understanding of the gravity of plaintiff's condition. Thus, if she were rating plaintiff's pain low without asking him about his subjective rating as the person who was experiencing the condition of his own teeth, it is plausible that she recklessly disregarded plaintiff's risk of suffering substantial harm, and contributed to allegedly unwarranted delay, worsening of plaintiff's condition, and continued pain. *See Gordon v. County of Orange,* 888 F.3d 1118, 1125 (9th Cir. 2018).

### 2. HSA Slothower, Individual Capacity

NaphCare defendants assert that plaintiff failed to state a claim against HSA Slothower because plaintiff failed to allege facts to show that HSA Slothower was deliberately indifferent in any way or that he was responsible in a supervisory manner for the unconstitutional actions of his subordinates. Dkt. 16 at 12.

In his Complaint, plaintiff alleges that as the Head Medical Administrator, HSA Slothower is responsible for the oversight of all medical staff, maintaining the medical facility, and ensuring that inmates with a serious medical need are transferred to an outside facility in a timely manner. Dkt. 4 at 10. Plaintiff additionally alleges that on January 26, 2022, he wrote a letter addressed to HSA Slothower informing him of plaintiff's worsening dental pain, the issues he was facing with his liquid diet, and asking to be transferred for treatment. *Id*. at 32-34. Plaintiff states (and the attachments to the

Complaint support the statements) that plaintiff filed a grievance about the delay in care and HSA Slothower stated in response: "[w]e are sorry for any delay in your treatment. Your concerns have been noted and we will make every attempt to avoid such delays in the future." *Id*. at 41.

Here, like the situation with Chief Jackson, the Complaint alleges that HSA Slothower was made aware of plaintiff's ongoing pain and other symptoms, lack of treatment, and delay of treatment, based on the letter that plaintiff wrote to him. Plaintiff has sufficiently alleged that HSA Slothower was informed of facts concerning the serious nature of plaintiff's condition and had the capacity to take steps to implement necessary care in a timely matter but instead failed to take action, which resulted in continued suffering. Therefore, as to HSA Slothower, plaintiff has plead sufficient facts to plausibly show that he was objectively unreasonable in his assessment and acts and omissions concerning plaintiff's condition, and that the acts or omissions caused a deprivation of plaintiff's constitutional rights.

### 3. Official Capacity

NaphCare defendants allege that plaintiff has failed to state a claim against Dr. Ordonez and HSA Slothower in their official capacities because he has failed to name NaphCare as an entity defendant and he has failed to allege any policies or customs of NaphCare that were the moving force behind the alleged violations of plaintiff's rights. Dkt. 16 at 12-13.

An official capacity claim must be treated as a claim against the entity. In an official-capacity suit, the plaintiff must demonstrate that a policy or custom of the entity of which the official is an agent was the moving force behind the violation. *See Hafer v*.

1  *Melo*, 502 U.S. 21, 25 (1991); *Graham*, 473 U.S. at 166. An entity can be liable under §

2  1983 only "when execution of a government's policy or custom, whether made by its

3  lawmakers or by those whose edicts or acts may fairly be said to represent official

4  policy, inflicts the injury." *Monell*, 436 U.S. at 693.

5       Here plaintiff has not alleged any policies or customs of NaphCare (as a separate

6  entity from Pierce County) that were the moving force behind either Dr. Ordonez's or

7  HSA Slothower's actions. Plaintiff has alleged official capacity liability against Dr.

8  Ordonez, and HSA Slothower; and *Monell* claims regarding policies, practices, and

9  customs of Pierce County.

10      Yet, it is unclear whether the contract between Pierce County and the private

11  entity NaphCare may potentially be an agreement where NaphCare has become a state

12  actor as a contractor of Pierce County, and whether an official capacity claim against

13  each of the NaphCare defendants should be addressed as equivalent to a suit against

14  NaphCare as an entity that acted under color of state law. *See, West v. Atkins,* 487 U.S.

15  at 56-57 ("In the State's employ, [a private physician under contract with the State]

16  worked as a physician at the prison hospital fully vested with state authority to fulfill

17  essential aspects of the duty, placed on the State by the Eighth Amendment and state

18  law, to provide essential medical care to those the State had incarcerated."); *Lopez v.*

19  *Dep't of Health Servs.,* 939 F.2d 881, 883 (9th Cir. 1991) (per curiam) (reversing the

20  district court for dismissing private health care entities as not acting under color of state

21  law, when the facts had not yet been developed about the nature of the contract

22  between the private entities and the State). At this early stage of the case, the legal

23  terms and factual aspects of the contract between Pierce County and NaphCare have

24

25

1   not been fully developed and it is unclear whether plaintiff should be required to amend

2   the complaint if plaintiff intends to assert claims against the private entity NaphCare.

3   *See American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 52 (1999) ("private insurers

4   will not be held to constitutional standards unless 'there is a sufficiently close nexus

5   between the State and the challenged action of the regulated entity so that the action of

6   the latter may be fairly treated as that of the State itself.'"). But on the face of the

7   complaint plaintiff plausibly asserts facts that would allow this claim to go forward under

8   an official capacity theory, under *West v. Atkins.*

9   **C. Additional Claims**

10      Plaintiff appears to additionally raise claims related to retaliation and access to

11  the courts in his Complaint. Specifically, it appears that plaintiff alleges that the foreign

12  objects found in his food (including "chemicals" and "a fishhook"), interference with his

13  legal mail, and the policy change that required plaintiff to obtain a subpoena in order to

14  access his medical records, were a form of retaliation that began after plaintiff informed

15  defendants that he intended to file a civil rights lawsuit. Dkt. 4 at 29, 35, 53. If plaintiff

16  intends to bring these claims, he must amend his Complaint to tell the Court: (1) the

17  constitutional right plaintiff believes was violated; (2) the name of the person who

18  violated the right; (3) exactly what that person did or failed to do; (4) how the action or

19  inaction of that person is connected to the violation of plaintiff's constitutional rights; and

20  (5) what specific injury plaintiff suffered because of that person's conduct. See *Rizzo*

21  423 U.S. 362, 371-72 (1976).

22                  IV.     CONCLUSION

23

24

25

The Court recommends that the Pierce County defendants' motions to dismiss (Dkts. 14) be denied. However, the Court recommends that the official capacity claims against Pierce County defendants should be dismissed as redundant. The Court recommends that the NaphCare defendants' motion to dismiss (Dkt. 16) be denied as to the claims against Dr. Ordonez and HSA Slothower in their individual capacities and in their official capacities. In addition, the Court recommends the court direct plaintiff to clarify whether he intends to bring claims related to retaliation or access to the courts against any defendant – and if he does, leave to amend should be granted. In addition, the Court should allow plaintiff an opportunity, after discovery, to amend the complaint if plaintiff chooses to pursue claims against NaphCare as an entity, if there is a factual and legal basis for doing so under *West v. Atkins*.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. See 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on June 9, 2023, as noted in the caption.

Dated this 16th day of May, 2023.

Theresa L. Fricke
United States Magistrate Judge